FILED
2016 Jan-15 PM 01:53
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

GREAT WESTERN DEVELOPMENT )
CORPORATION, INC.; and )
VENTEC, L.L.C., )
                                    )      CIVIL ACTION NO.:
       Plaintiffs, )      7:15-CV-02160-LSC
                                    )
v. )
                                    )      JURY TRIAL DEMANDED
JONATHAN BENISON, individually and )
In his official capacity as )
Sheriff of Greene County, Alabama; )
WILLIAM NICK UNDERWOOD, individually )
And in his official capacity as )
Greene County Commissioner; YOUNG )
PEOPLES ALLIANCE ORGANIZATION; )
RIVER'S EDGE BINGO, L.L.C., )
                                    )
       Defendants. )

## AMENDED COMPLAINT

1. This is an action by a non-profit organization, Great Western Development Corporation, Inc. ("Great Western")and Ventec, L.L.C., against Jonathan Benison individually and in his official capacity as the Sheriff of Greene County, Alabama; William Nick Underwood individually and in his official capacity as Greene County Commissioner; Young Peoples Alliance Organization; and River's Edge Bingo, L.L.C. This Complaint includes claims: (1) against Defendant Benison, pursuant to 42 U.S.C. § 1983, for violations of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (2) against all Defendants, pursuant to 42 U.S.C. § 1983, for a

1

conspiracy to deprive Great Western and Ventec of the equal protection of the laws; (3) against all Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (4) against all Defendants for conspiracy to violate RICO, (5) against Defendants Underwood, Young Peoples Alliance Organization and River's Edge for tortuous interference with contractual or business relations, (5) against all Defendants for Civil Conspiracy, (6) against Defendant Benison for Fraud.

2. Since on or about March 2012, Defendants, which constitute an Enterprise, have engaged in the improper influence of a public servant in connection with the issuance, enforcement and application of Amendment 743 Alabama Constitution and the Rules and Regulations for the operation of Bingo within Greene County, Alabama. Said Enterprise is more fully described herein.

3. Throughout the applicable time period, Defendants Underwood, Young Peoples Alliance Organization and River's Edge, through unlawful influence, caused Defendant Benison to arbitrarily apply the Rules and Regulations for the operation of Bingo within Greene County, Alabama. Said Rules and Regulations were applied in such a way that caused detriment to Plaintiffs while favoring Defendants Young Peoples Alliance Organization and River's Edge.

**JURISDICTION**

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically 42 U.S.C. § 1983 and 18 U.S.C. § 1962. This Court has supplemental jurisdiction over the Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a) because all Defendants reside in this district, all Defendants are subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this district.

**PARTIES**

6. Plaintiff Great Western Development Corporation, Inc. is a federally-recognized tax-exempt nonprofit organization and located in Jefferson County and Greene County, Alabama. Its mission is to assist the elderly in gaining housing and assisting in the expense of the burial of United States Veterans.

7. Plaintiff Ventec, L.L.C. is a limited liability company formed under the laws of the State of Alabama, and its principal place of business is in the State of Alabama.

8. Defendant Jonathan Benison is a citizen and resident of

3

Greene County, Alabama.  Defendant Benison is also the Sheriff of Greene County, Alabama.

9. Defendant William Nick Underwood is a citizen and resident of Greene County, Alabama.  Defendant Underwood was at all time relevant, also a member of the Greene County Commission.

10.  Defendant Young Peoples Alliance Organization is a non-profit organization located in Greene County, Alabama.

11.  Defendant River's Edge Bingo, L.L.C. limited liability company formed under the laws of the State of Alabama and its principal place of business is in the State of Alabama.  River's Edge Bingo, L.L.C. does business as River's Edge Bingo Barn.

FACTUAL BASIS

12.  On or about January 21, 2011, Defendant Benison as Sheriff of Greene County, Alabama, enacted the Rules and Regulations for the operation of Bingo within Greene County, Alabama, pursuant to Constitutional Amendment 743 Alabama Constitution.  (Attached hereto as Exhibit 1).

13.  Pursuant to those Rules and Regulations, on or about October 22, 2011, Defendant Benison issued to Great Western Development Corporation, Inc. an unrestricted Class B Charity Bingo License.  (Attached hereto as Exhibit 2).

14.  Said license was issued to Great Western following

4

lengthy discussions between Defendant Benison and Great Western's representatives regarding the location and operation of the proposed Bingo facility.

15. Included in these discussions was a presentation by Great Western involving a description of the property (a facility located off of Exit 52/ Knoxville Exit in Greene County, Alabama) renderings of the facility, along with prospective future development of said property.

16. Following the issuance of said license, and relying on the representations made by Defendant Benison, Plaintiffs Great Western and Ventec, LLC, vendor and developer for Great Western, began investing substantial sums of monies in the property developing it to facilitate a Bingo operation.

17. Following that said expenditure, beginning on or about March 2012, Defendant Benison, through his legal counsel J. Flint Liddon, began sending correspondence to Mr. Don Baylor of Great Western stating issues Defendant Benison had with the location of the site. These issues were contrary to the discussions Plaintiffs had with Defendant Benison and Plaintiffs were taken aback by the sudden change discussion.

18. On at least one occasion, Greene County Sheriff Deputies showed up on the Plaintiff's property with lights and sirens while Plaintiffs were there with prospective investors.

Sheriff used his official position to intimidate Plaintiffs and investors.

19.   Plaintiffs attempted to have several meetings with Defendant Benison but was denied.

20.   On or about October 2011, Defendant Young Peoples Alliance Organization received a Bingo License and was operating out of a Comfort Inn located in Greene County, Alabama.

21.   At all times relevant hereto, Defendant William Nick Underwood was President of the Green County Commission as well as counsel for Defendant Young Peoples Alliance Organization.

22.   Plaintiffs shared the aforementioned property description, renderings of the facility and future related development with Defendant Underwood as Commission President.

23.   On or about October 2012, Plaintiff Great Western submitted its $2,500.00 fee for the renewal of its Bingo License.

24.   Thereafter, Defendant Benison informed Plaintiff that he would not allow it to continue to develop on the original site as agreed and wherein Plaintiff had already invested significant sums. Instead he would transfer Great Western's license to another location.

25.   At or about the same time as terminating the project

of Great Western, Defendant Benison transferred Young Peoples Alliance Organization's Bingo License to the very same property he denied Great Western the right to build on.

26.  Young Peoples Alliance Organization used the very same plans, architects and structure Great Western had intended to develop.

27.  Said development was performed by Defendant River's Edge Bingo, LLC and is currently operating a Bingo facility doing business as River's Edge Bingo Barn on the property Defendant Benison indicated he would not permit such an operation on.

28.  Plaintiffs attempted to relocate a facility to a newly described location as directed by Defendant Benison just to expend additional funds and again be thwarted.

29.  On or about December 12, 2012, Defendant Benison wrote Great Western informing it that he was returning a check in the amount of $2,500.00 for a license fee indicating he could not accommodate its project of a bingo facility in its present state.  Said monies were never returned.

## PATTERN OF RECKETEERING ACTIVITY

30.  As described more fully herein, the Defendants are engaged in an ongoing pattern of racketeering as defined by 18 U.S.C. § 1961(5).

31.  The pattern of racketeering activity engaged in by the

7

Defendants consists of more than two acts of racketeering activity, the most recent of which occurred within ten years after the commission of a prior act of racketeering activity.

32. Under 18 U.S.C. § 1961(1), "racketeering activity" includes any act or threat involving bribery that is chargeable under state law and punishable by imprisonment for more than one year.

33. The racketeering activity in this case includes an ongoing pattern of violations of Alabama's bribery statutes.

34. Ala. Code § 13A-10-60, *et seq*. is entitled "Bribery and Corrupt Influence." Ala. Code § 13A-10-60 incorporates the definition of "public servant" set forth in Ala. Code § 13A-10-1. Ala. Code § 13A-10-1(7) defines a "public servant", in pertinent part, as "any officer or employee of government, including…any person…participating as an adviser, consultant, or otherwise in performing a government function."

35. Defendant Underwood and Benison were acting as public servants and Underwood was acting as an advisor and attorney to Young Peoples Alliance Organization all times relevant hereto.

36. Ala. Code § 13A-10-61(a) states that "a person commits the crime of bribery if:

> (A) He offers, confers or agrees to confer any thing of
> value upon a public servant with the intent that the
> public servant's vote, opinion, judgment, exercise

8

of discretion or other action in his official
capacity will thereby be corruptly influenced; or

(B)    While a public servant, he solicits, accepts or
agrees to accept any pecuniary benefit upon an
agreement or understanding that his vote, opinion,
judgment, exercise of discretion or other action as
a public servant will thereby be corruptly
influenced.

Ala. Code § 13A-10-61(a).  Ala. Code § 13A-10-61(c) states that
"Bribery is a Class C felony."  Pursuant to Ala. Code § 13A-5-6,
a Class felony is punishable by imprisonment for a term not more
than 10 years or less than 1 year and 1 day.

37.   Defendants Underwood, Young Peoples Alliance
Organization and River's Edge along with Defendant Benison have
violated and continue to violate Ala. Code § 13A-10-61(a)(1).
As described fully herein, Young People Alliance Organization
have offered, conferred and/or agreed to confer things of value
upon Defendant Underwood with the intent that Underwood's
opinion, judgment, exercise of discretion, or other actions in
advising and consulting with Defendant Benison in the issuance
and regulation of Bingo licensing in Greene County, Alabama.

38.   Defendant Underwood has violated and continues to
violate Ala. Code § 13A-10-61(a)(2).  As described more fully
herein, Underwood on multiple occasions since October 2011 has

9

solicited, accepted and/or agreed to accept pecuniary benefits from Defendants Young Peoples Alliance Organization and River's Edge upon an agreement or understanding that Underwood's opinion, judgment, exercise of discretion, or other actions in advising and consulting with Defendant Benison in the issuance and regulations of Bingo Licensing in a corrupt manner.

39.   Each such violation of Ala. Code § 13A-10-61 constitutes an act of "racketeering activity" under 18 U.S.C. § 1961(1)(A).

40.   On numerous occasions since October 2011, Defendants Young Peoples Alliance Organization and River's Edge bestowed upon Defendant Underwood things of value in the form of legal fees and other payments.

41.   In a bribery case, intent may be established by circumstantial evidence.   *See United States v. Massey*, 89 F.3d 1433, 1439 (11th Cir. 1996).   The circumstances surrounding the revocation of Plaintiffs license and issuance of license to Young Peoples Alliance Organization on same property establish that Young Peoples Alliance Organization and River's Edge intended to corruptly influence Defendant Underwood and Defendant Benison and Underwood and Benison agreed or understood that their actions would be corruptly influenced.

**THE ENTERPRISE**

42.   Defendants were associated in fact as an "enterprise"

10

as that term is defined by 18 U.S.C. § 1961(4). Defendant Underwood was and is the attorney for Young Peoples Alliance Organization and River's Edge, while at the same time serving as President of the Greene County Commission.

43. That Enterprise was formed for the common purpose of enriching certain of its members through a pattern of bribery that allowed Young Peoples Alliance Organization and River's Edge to operate a Class B bingo parlor in a prime location in Greene County.

44. Each associate of the Enterprise conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity described above. Defendants Young Peoples Alliance Organization and River's Edge bestowed things of value on Defendant Underwood by providing him benefits in the form of legal fees. Defendant Underwood then influenced Defendant Benison in the revocation of Plaintiff's license along with the transfer of Defendants Young Peoples Alliance Organization and River's Edge license.

45. The Enterprise is engaged in and affects interstate commerce in a variety of ways.

46. The Enterprise is engaged in and affects interstate commerce in that the individuals who participate in Defendant River's Edge electronic bingo games travel in interstate commerce to reach the facility. Furthermore, Defendant River's

Edge is engaged in and affects interstate commerce by advertising its bingo parlor in interstate commerce. River's Edge maintains an interstate website that can be and is accessed by persons outside of Alabama.

## INJURY

47. Under 18 U.S.C. § 1964(c), "any person injured in his business or property" by racketeering activities may sue for those injuries and recover treble damages. A plaintiff may recover any damages proximately caused by the racketeering activity, including lost profits. *See Maiz v. Virani*, 253 F.3d 641, 662-663 (11th Cir. 2001).

48. Because of the racketeering activity, which has resulted in the creation and maintenance of River's Edge Bingo Barn, Plaintiffs have been unable to conduct business. Accordingly, the racketeering activity has been and continues to be the direct and proximate cause of an injury to Plaintiffs. As a result of that injury, Plaintiffs have suffered damages in the form of lost investment, lost profits and diminished value of their investments.

49. The Eleventh Circuit stated "proximate cause is not…the same thing as a sole cause', and it is enough for the plaintiff to plead and prove that the defendant's tortious or injurious conduct was a 'substantial factor in the sequence of responsible causation." *Williams v. Mohawk Industries, Inc.*,

465 F.3d 1277, 1288 n.5 (11th Cir. 2006).   The pattern of racketeering activity in this case was certainly a substantial factor, it not the sole factor, in the sequence of causation that led to Plaintiffs' injuries.

## COUNT I

### (RICO 18 U.S.C. § 1962(C))

50.  Plaintiffs incorporate all foregoing paragraphs as if stated fully herein.

51.  Plaintiffs are a "person" as defined in 18 U.S.C. § 1961(3), which have been injured in its business or property by the conduct of Defendants in violation of RICO.

52.  Each Defendant is a "person" as defined in 18 U.S.C. § 1961(3), culpable for his or its conduce in violation of RICO.

53.  The Defendants have conducted and participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

54.  As a direct and proximate result of the Defendants' violations of 18 U.S.C. § 1962(c), the Plaintiffs have been injured in their business and/or property through lost profits and lost investments and licensing fees in an amount to be proven at trial.   Under 18 U.S.C. § 1964, the Plaintiffs are entitled to bring this action and to recover herein treble

damages and the costs of bringing this lawsuit, including attorney's fees.

## COUNT II

### (RICO 18 U.S.C. § 1962(d))

55. Plaintiffs incorporate all foregoing paragraphs as if stated fully herein.

56. Defendants, being persons employed by or associated with the Enterprise described above, unlawfully and willfully combined, conspired, confederated, and agreed with each other to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.

57. As part of the conspiracy, each Defendant agreed to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity described above.

58. The racketeering acts which Defendants committed and caused to be committed were overt acts taken in furtherance of the conspiracy.

59. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business or property through lost profits, lost investments and lost licensing fees in an amount to be proven at

trial.   Under 18 U.S.C. § 1964, Plaintiffs are entitled to bring
this action and to recover herein treble damages and the costs
of bring this lawsuit, including attorney's fees.

COUNT III

(Violation of the Equal Protection Clause)

60.  Plaintiffs incorporate all foregoing paragraphs as if
stated fully herein.

61.  Defendant Benison, under the color of state law and
his authority as Sheriff of Greene County, has intentionally
treated the Plaintiffs differently from other similarly situated
organizations, and there is no rational basis for the difference
in treatment.   Accordingly, the Plaintiffs have been denied
their right to equal protection of the laws under the Fourteenth
Amendment to the United States Constitution.

62.  Plaintiff Great Western is a non-profit organization.
It was approved for an unrestricted Class B license by Defendant
Benison.   Accordingly, it is similarly situated to those Greene
County charities that have been allowed to maintain their
licenses and operate a Bingo facility.

63.  Ventec, LLC is a vendor and developer contracted with
Great Western.   Accordingly, Ventec, LLC is similarly situated
to River's Edge, Greene Track, and all other vendor/developers
in Greene County.

64.  Defendant Benison has intentionally treated the

15

Plaintiffs differently from their similarly situated counterparts by failing to renew appropriate licenses and the treatment of the location of the facility.    That different treatment constitutes intentional and arbitrary discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.    There is no rational basis for that different treatment.

65.   There is no rational basis for the forced moved location for the license issued in 2011.   There is no rational basis for the denied renewal/revocation of the license in 2012.

66.   In addition to lacking rational basis, the actions of Defendant Benison are arbitrary, capricious and intended to discriminate against Plaintiffs.

<u>COUNT IV</u>

**(Conspiracy to Deprive the Plaintiffs of the Equal Protection of the Laws)**

67.   Plaintiffs incorporate all of the foregoing paragraphs as if stated fully herein.

68.   Defendant Benison and Defendants Young Peoples Alliance Organization and River's Edge, agreed or had an understanding- reached by and through with the assistance and influence of Defendant Underwood, that Defendant Benison would revoke Plaintiffs license and deprive them of their location and plans and ability to operate and profit.    Accordingly,

16

Defendants Young Peoples Alliance Organization and River's Edge were jointly engaged with Defendant Benison, a state official, in the deprivation of the Plaintiff's equal protection rights.

69. As a result of the deprivation and its perpetuation, the Plaintiffs have been injured in an amount to be proven at trial.

## COUNT V

**(Tortious Interference with Contractual and Business Relations)**

70. Plaintiffs incorporate all of the foregoing paragraphs as if stated fully herein.

71. Plaintiff Great Western contracted with Ventec to develop and be a vendor for the Bingo facility.

72. Defendants had knowledge of these contractual relationships.

73. With knowledge of those contractual relationships between Great Western and Ventec, Defendants Young Peoples Alliance Organization, River's Edge and Underwood intentionally interfered with those contractual and business relationships by influencing, aiding and/or directing Defendant Benison to revoke Plaintiff's license and location.   That interference was unjustified.

74. The Plaintiffs have been damaged-and continue to be

damaged-by the intentional interference with their contractual relationships by the actions of Defendants Young Peoples Alliance Organization, River's Edge and Underwood.

## COUNT VI

### (Civil Conspiracy)

75.  Plaintiffs incorporate all of the foregoing paragraphs as if stated fully herein.

76.  Defendants herein acted in concert and conspired to accomplish an unlawful end or to accomplish a lawful end by unlawful activities.

77.  Defendants all participated in the unlawful activity of violating the laws of the State of Alabama and causing injury to Plaintiffs.

78.  As a result of said civil conspiracy, Plaintiffs have been-and continue to be damaged-by the intentional actions of Defendants.

## COUNT VII

### (Fraud)

79.  Plaintiffs incorporate all of the foregoing paragraphs as if stated fully herein.

80.  On or about April 2011, Mr. Don Baylor, on behalf of Great Western, met with Sheriff Benison to discuss the issuance of a bingo license. During that discussion, Mr. Baylor described using that license to build a destination location in

18

Greene County which would in turn create significant employment opportunities as well as revenue for the county.

81.  Sheriff Benison expressed interest in Great Western's proposal, and asked Mr. Baylor to return for a meeting that included the Sheriff's attorney Flint Liddon.

82.  On or about June 2011, Mr. Baylor met with Sheriff Benison and his attorney Mr. Liddon to discuss the development and issuance of a bingo license.  During that meeting, Mr. Baylor described his plans to Benison and Liddon, which included the location of the proposed facility on approximately 123 acres close to the Knoxville exit on Highway 59. In time, this project would include a hotel, restaurant and outlet mall center.

83.  Located on the property was a plantation style house which was agreed would be upgraded and house a temporary charity bingo facility containing approximately 100 machines to operate during the construction of the main permanent facility.

84.  This project was agreed to my Benison, and he told Baylor to get the application submitted along with $2,500.00 licensing fee.  The application was submitted and fee paid and on October 22, 2011, an unrestricted Class B Qualified Location License was issued to Great Western by Sheriff Benison.

85.  Said exchange of value constituted a contractual agreement between Sheriff Benison in his official capacity as Sheriff of Greene County, Alabama and Great Western.

19

86. In reliance of said agreement and understanding, Great Western entered into a lease for the property and began expending significant sums toward upgrading the plantation house on the property. Throughout this time, Great Western through Don Baylor, spoke with Sheriff Benison and requested that he visit the site to see how the development was progressing. Benison would respond that he knew what was going on and didn't need to come out there.

87. On or about March 9, 2012, Baylor received a letter from Attorney Liddon on behalf of the Benison outlining issues he had with the development.

88. Included in that letter was, "In a nutshell, the piece of property close to the Knoxville exit on Highway 59 is not considered by the Sheriff to be an appropriate place to house Bingo operations and he will not allow any such operations at that location." The letter went on to discuss additional issues taken by the Sheriff including complaints from residents, property lease concerns, structural concerns of the plantation house, utility issues with the house and traffic concerns.

89. On or about March 15, 2012, counsel for Great Western responded to Attorney Liddon's letter reminding the Sheriff that in their initial discussions it was agreed that the plantation house would serve as a temporary site for bingo operations while work was done on the permanent site.

20

90.  Following the exchange of letters, Baylor met with Benison and was told that he didn't have a problem with the site but had received a complaint from a Greene County Judge about noise and had to address it.  Baylor was told to continue on with the project.

91.  Plaintiffs continued to develop the property until on or about September 2012, when Benison informed them that he would not allow them to operate a bingo facility on that property.  Benison informed them that if they wished to operate a bingo facility they would need an alternate location.

92.  Although plaintiffs had already expended significant sums toward the original location, they were forced to move to a location at 29740 Highway 11 Knoxville, AL.

93.  Plaintiffs paid for a renewal of their license in the amount of $2,500.00 on October 12, 2012 and were issued a license on October 22, 2012 for the location at 29740 Highway 11.

94.  Again, Plaintiffs expended significant sums toward the operation of a bingo facility at the new location with a bingo license in hand.

95.  At or about that same time period, what is today River's Edge Bingo Barn began construction on its facility.  Said facility is operated under the charity Young Peoples Alliance Organization, whose attorney is William Nick Underwood.

21

96.   On or about December 12, 2012, Benison issued a letter to James Carter and Great Westerns Board of Directors stating "At this time the Greene County Electronic Bingo Office is returning your check in the amount of $2,500.00 for a license fee.   The Sheriff and his bingo office is continuing with the article of information that is enclosed.   At this time I can not (sic) accommodate you in your project of a bingo facility in its present state."

97.   Great Western's check was never returned and on or about January 10, 2013, correspondence was sent to Great Western via Benison's attorney Liddon which stated in part that any license issued to Great Western was conditioned upon its responses to application questions as we as documents to be submitted, that the structure being built was not modeled properly, that certain members of the original group were no longer associated with Great Western and that Jim Woods was now involved and he was being under Federal investigation in Kentucky for fraudulent receipt of FEMA funds…as you are aware, the Sheriff's department has not accepted nor cashed Great Western's fee for license renewal.

98.   All of the information contained in said letter was either new information being provided to Great Western and/or completely false.   Great Western was never asked to fill out a new application, after all, they already had a bingo license,

this was simply a renewal.  The structure described in the meetings was in the process of being built.  Land was being excavated and work was being done.  A temporary structure was brought in to create temporary revenue to help fund the project since the previous actions of the Sheriff as run off several investors.  Jim Woods was not then, nor had he ever been being investigated by the Federal Government for any wrongdoing.  And lastly, the Sheriff's department did in fact accept payment from Great Western in the form of a cashiers check in the amount of $2,500.00 and a new license was issued.

99.  At the time of the purchase of the Bingo License by Great Western, Defendant Benison made false representations to Plaintiff and Plaintiff relied on those representations to its detriment.

100. Defendant Benison approved plans submitted by Great Western, and funds were expended in reliance of that approval.

101. Said representations by Defendant Benison were knowingly false.

WHEREFORE, the Plaintiffs pray that this Honorable Court enter judgment against the Defendants and award them:

a. Appropriate injunctive relief requiring Sheriff Benison to issue Great Benefits a Class B license.

b. To award damages to the Plaintiffs in an amount to be proven at trial, treble damages, and punitive damages.

c. For costs, including attorney's fees; and

d. For such further and additional relief as the Court deems just and proper.

### PLAINTIFFS DEMAND TRIAL BY STRUCK JURY

Respectfully submitted,

/s/ Bret M. Gray
(ASB-3837-G54B)
1818 Third Avenue North
Bessemer, AL 35020
(205) 424-8255
(205) 424-8244- fax
bretg@griffin-assoc.com

Attorney for Plaintiffs

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on Hon. Craig S. Dillard and Hon. Fred L. Clements, Jr. by filing the same electronically with the Clerk of Court using the CM/ECF system and by serving the below listed via U.S. mail, postage prepaid, properly addressed, this the 15th day of January 2016.

William Nick Underwood
2626 7th Street
Tuscaloosa, AL 35401

Young Peoples Alliance Organization
56 Kind Loop
Eutaw, AL 35462

River's Edge Bingo, L.L.C.
29214 U.S. 11
Knoxville, AL 35469

/s/ Bret M. Gray
OF COUNSEL

# EXHIBIT 1

## RULES AND REGULATIONS FOR THE OPERATION
## OF BINGO WITHIN GREENE COUNTY, ALABAMA

WHEREAS, all previous rules and regulations for the operation of charitable Bingo within Greene County, Alabama are hereby rescinded and/or revoked and/or declared to be null and void;

WHEREAS, the rules and regulations contained in this article are intended by the Office of County Sheriff for Greene County, Alabama to replace in their entirety any and all previous rules and regulations for the operation of charitable Bingo within Greene County, Alabama, and that the rules and regulations contained in this article are to go in effect immediately on this the 21 day of Jan., 2011 and to continue in full force continuously hereafter until such time as the Office of County Sheriff of Greene County, Alabama might, in the future, undertake to amend and/or revise said rules and regulations;

WHEREAS, pursuant to the authority granted in Amendment Number 743 to the Constitution of Alabama 1901, the Office of County Sheriff (the Sheriff), for the welfare and benefit of the citizens of Greene County, Alabama and the State of Alabama, desires to ensure that all forms of Bingo made lawful in Greene County, Alabama by Amendment Number 743, Constitution of Alabama 1901, shall be regulated according to the law;

WHEREAS, Amendment Number 743 to the Constitution of Alabama 1901, provides that

> *Bingo games for prizes or money may be operated by a non-profit organization in Greene County. The Sheriff shall promulgate rules governing and to regulate for the licensing, permitting, and operation of Bingo games within the county.*

WHEREAS, it is the intent of the Sheriff of Greene County, Alabama that all forms of the game known as "Bingo", including, but not limited to, those Bingo games

using electronic marking machines, shall be subject to licensure and regulation within the limits of Greene County, Alabama;

WHEREAS, Amendment Number 743 to the Constitution of Alabama 1901, also requires that the Sheriff of Greene County, Alabama promulgate rules and to regulate the licensing and operation of Bingo games to ensure compliance with the following minimum requirements of the Alabama Constitutional Amendment as well as other rules and regulations promulgated by the Greene County Sheriff:

(1)     No person under the age of nineteen (19) years shall be permitted to play any game or games of Bingo, nor shall any person under the age of nineteen (19) years be permitted to conduct or assist in the operation of any game of Bingo;

(2)     Bingo games shall be operated exclusively on the premises owned or leased by the non-profit organization operating the Bingo game. Such location should be specified in the application of the non-profit organization;

(3)     A non-profit organization may not enter into any contract with any individual, firm, association or cooperation to have the individual or entity operate Bingo games or concessions on behalf of the non-profit organization. The non-profit organization may not pay consulting fees to any individual or entity for any services performed in relation to the operation or conduct of a Bingo game;

(4)     A non-profit organization may not lend its name or allow its identity to be used by another person or entity in the operating, promoting or advertising of a Bingo game in which the non-profit organization is not directly and solely operating the Bingo game;

(5)     All equipment shall be stamped and/or clearly marked in letters no less than ½ inch in height and ¼ inch in width except for the letter "I" with the name of the non-profit organization using the equipment. A non-profit organization or other person or entity may not use equipment marked with the name of another non-profit organization;

(6)     Prizes given by any non-profit organization for the playing of Bingo games shall not exceed ten thousand dollars ($10,000.00) in cash or gifts of equivalent value during any Bingo session;

(7)   A non-profit organization may not advertise Bingo except to the extent and in the manner authorized by rule of the Sheriff. If the Sheriff allows a non-profit organization to advertise Bingo, the non-profit organization shall indicate in the advertisement the purposes for which the net proceeds will be used by the non-profit organization unless the non-profit organization shall request otherwise and the Sheriff's Office having considered and granted said request;

(8)   The non-profit organization shall display its Bingo license conspicuously at the location where the Bingo games is conducted;

(9)   The Sheriff shall determine by regulation the days of operation during any calendar week and the hours of operation.

THEREFORE, the Sheriff of Greene County, Alabama hereby adopts, promulgates and sets forth the following Rules and Regulations for licensure and for the permitting and operating of Bingo games (hereinafter sometimes referred to as "Rules", "Regulations" or "Rules and Regulations") to regulate the issuance of license and for the operation of Bingo games pursuant to Amendment Number 743 to the Constitution of Alabama, 1901:

## Section 1: Definitions

The following words, terms and phrases when used in these Rules and Regulations, shall have the meanings ascribed to them except where the context clearly indicates otherwise:

(a)   *Authorized Organization* (hereinafter sometimes referred to as "non-profit organization") means and includes any bonafide religious, educational, service, senior citizens', fraternal or veterans' organization which operates without profit to its members or is exempt from taxation by virtue of having been classified as a tax-exempt non-profit organization by the Internal Revenue Service, United States Government. This term includes a volunteer fire department and a volunteer rescue squad. Authorized non-profit organizations need not be domiciled in the state of Alabama. There shall be no limit on the number of non-profit organizations which may operate Bingo games at a Bingo facility.

(b)   *Bingo* or *Bingo games* shall mean that specific kind of game commonly known as Bingo in which prizes are awarded on the basis of designated numbers or symbols on a card or electronic marking machine conforming to numbers or symbols selected at

random (whether or not electronic, computer or other technologic aids are used in connection therewith). To the extent that the foregoing elements are present in the game of Bingo, it can be played with different kinds of equipment varying from one end of the spectrum, using traditional cards displaying the grids and used with tokens to cover a designated square on the card, to the technologically and computer advanced end of the spectrum where electronic devices and/or computers perform the operation of the game with microprocessors or other computer devices and interact with the human players by means of an electronic and/or computer console. The definition of Bingo shall include both "call Bingo" in which designated numbers or symbols are drawn by a person and matched to numbers or symbols on a paper card, as well as "electronic Bingo" in which the numbers or symbols are selected at random by a computer and the card is present only in electronic format. In the event that any controversy concerning whether or not certain activity, or type of activity, constitutes the game of "Bingo", as herein defined, and for which a license may be issued, the decision of the Sheriff of Greene County shall control and shall be final. The prizes or evidence thereof for winning Bingo games may be dispersed by the electronic devices or consoles used in playing such games at the time each game is won or on different schedules that reflect a record of wins and losses involving multiple games.

(c)    *Bingo equipment and supplies* shall mean any electronic or mechanical equipment, machine or device, or computer or other technologic hardware or device, (i) which is installed, or is to be installed at a Bingo facility and (ii) which is used, or can be used, to play Bingo as herein defined. Bingo equipment and supplies includes any machine, device or hardware that assists a player or the playing of Bingo games (and it is this "machine" which assists a player in the playing of a bingo game that is referred to in Section 4), broadens the participation levels in a common game and includes all the ancillary Bingo supplies. Examples of Bingo equipment and supplies include, but are not limited to, dispensers, readers, electronic player stations, player terminals, central computer servers containing random number generators and other processing capabilities for remote player terminals, electronic consoles capable of providing game results in different display modes, telephones and telephone circuits, televisions, cables and other telecommunication circuits, and satellites and related transmitting and/or receiving equipment. All of these aforementioned items may also be known, when linked together, separately or severally, as electronic marking machines. Or may be part of the electronic marking machine. Bingo equipment shall not

be deemed to be for any purpose a "gambling device" or "slot machine" within the meaning of the Code of Alabama 1975, § 13A-12-20 (5) and (10) or any other provision of law, whether now in effect or hereafter enacted.

(d)   *Bingo session.* Any continuous series of Bingo games conducted pursuant to this Article provided that any session shall end and a new session start when the prize amount given out by the non-profit organization operating a Bingo session exceeds ten thousand dollars ($10,000.00) for each such non-profit organization.

(e)   *Bingo facility.* A facility in which Bingo games are operated by non-profit organizations as provided in this Article. As long as non-profit organizations are operating the Bingo games, the Bingo facility may be owned or operated by an individual, partnership or for-profit organization.

(f)   *License.* A license issued pursuant to the provisions of this Article. May also be referred to as "permit."

(g)   *Prizes given.* Cash or prizes of equivalent value awarded in "call Bingo" or in the case of "electronic Bingo," cash or prizes given by the facility cashier to players at the completion of play.

(h)   *Qualified location* shall mean a location which has been inspected and approved by the Sheriff for the conduct of Bingo games and which also satisfies the definition of "location" below.

(i)   *Location* shall mean a building, hall, enclosure, room or other indoor area that complies with all Federal, State and local laws and applicable building and fire codes, as well as any other further regulations as prescribed by the Sheriff.

(j)   *Non-profit organization* shall mean an organization for charitable, educational, or other lawful purpose which operates without profit to its members and/or which has been classified by the Internal Revenue Service as a tax-exempt organization.

(k)   *License holder* shall mean any non-profit organization that has been issued a Bingo license by the Sheriff pursuant to these Regulations. May also be termed "permit holder."

**Section 2. Authorization.**

It shall be lawful pursuant to Amendment Number 743 to the Constitution of Alabama, 1901 for any authorized non-profit organization as defined in this Article, upon

obtaining a license therefore as herein provided, to conduct games of Bingo within the limits of Greene County, Alabama.

**Section 3. License.**

(a)     Each applicant organization shall file with the Office of Sheriff of Greene County a written application on a form prescribed by the Office of Sheriff.

(b)     In each application there shall be a designated member of the applicant organization under whom the games of Bingo are to be conducted, and there shall be attached to the application a statement executed by the member so designated that such member will be responsible for the conduct of such Bingo games in accordance with the terms of the license issued to such applicant organization, the provisions of this Article and such Constitutional amendment. Persons other than the above-referenced member may participate in the operation of the Bingo games, subject to the supervision of the above-referenced member.

(c)     The Office of Sheriff of Greene County, Alabama shall cause to be investigated the qualifications of each applicant organization as provided under this Article with due expedition after the filing of each application and shall authorize the issuance of a license to an authorized non-profit organization upon the payment to the Greene County Sheriff's Office of a license fee of twenty five hundred dollars ($2,500.00) for each license year. Any and all license fees shall be split between the Greene County Sheriff's Office and the Greene County Commission on a fifty-fifty basis with each entity receiving one half of all license fees. The Office of Sheriff of Greene County, Alabama may designate the investigation to be completed by any representative of the Sheriff's Office that the Sheriff may so appoint at his/her sole discretion. If the Sheriff does in fact elect to exercise his authority to appoint a representative to conduct any investigation regarding applicant qualifications then the appointed representative shall have sole authority to do, but is not limited to, the following: (a) conduct any investigation; (b) make findings and recommendations regarding said qualifications to the Sheriff; (c) make any inspection of and be granted complete and unfettered access to any and all documents and/or financial instrument and/or bank record and/or financial record and/or any other document by whatever name known and in whatever form found belonging to and/or in the possession of (constructive or otherwise) and/or pertaining to and/or relating to and/or mentioning any applicant organization being investigated as well

Page 6 of 18

as any officer and/or agent and/or employee and/or shareholder of any such applicant organization.

(d) Prior to issuing any license, the Sheriff and/or the Sheriff's representative shall investigate at least the following:

(i) The relationship between the non-profit organizations and those who provide equipment, facilities, or service;

(ii) Whether any electronic Bingo games meet the requirement of these Rules and Regulations;

(iii) Whether any Bingo games meet the requirements of the Alabama Constitution and its Amendments, as well as any other legal requirements whether statutory or created by common law;

(iv) Whether any building in which a facility is located, as well as any fixtures or appurtenances affixed or adjacent thereto, meets the requirements of any and all applicable municipal building codes and/or county building codes and/or state building codes and/or national building codes, as well as any and all requirements of these Rules and Regulations promulgated by the Sheriff of Greene County, Alabama;

(v) The relationship between the non-profit organization and/or its members and/or employees an/or agents and any organized criminal syndicate and/or any other known criminal figures;

(vi) Whether the Bingo facility and any machines therein meet the requirements of these rules and regulation promulgated by Sheriff of Greene County, Alabama;

(vii) Whether the Bingo Equipment and Supplies meet the requirements of these Rules and Regulations and the law;

(viii) Whether the equipment used is fair to the general public and free of any tampering and/or manipulation that would render the numbers generated and/or selected anything other than "at random" or "randomly."

(e) As part of the application process, the Greene County Sheriff shall make a finding that the applicant is an authorized non-profit organization and that the procedures and practices it intends to use in operating the Bingo games fully comply with these Rules and Regulations and any applicable Amendment to the Alabama

Constitution, and is also in the best interests of Greene County, Alabama and its citizens. The Sheriff can make this finding based upon the recommendation of any representative appointed pursuant to these Rules and Regulations to make such investigation.

(f)     A license must be renewed annually by filing a renewal application with the Office of Sheriff of Greene County, Alabama within thirty (30) days prior to the date of expiration of the license on a form prescribed by the Office of Sheriff of Greene County, Alabama. The Office of Sheriff shall issue or deny such renewal in the same manner as the issuance or denial of an original application for a license including, but not limited to, investigations as herein prescribed.

(g)     Any entity that was granted a license to conduct Bingo games in Greene County within the twelve (12) months preceding 01/21/2011 shall be "grandfathered" in with regard to these Rules and Regulations, and said license shall be valid for twelve (12) months beyond the date upon which said license was granted, and after which time said license shall be void and said entity shall then be subject to these Rules and Regulations adopted herein and shall apply for a license as directed herein. If any entity was granted a license prior to one year before 01/21/2011 that entity is not "grandfathered" in with regard to these rules and regulations and this section (g) does not apply. For example, if the entity was granted a license by a prior sheriff on or before 01/20/2010 then that entity is NOT grandfathered in with regard to these rules and regulations and said entity must apply for a license/application as set forth herein these rules and regulations.. If the "prior license" does not have a date specified it shall be assumed that said "prior license" was issued on 01/21/2010. Any previous license issued by a previous sheriff that purports to license for greater than a twelve (12) month period is declared null and void by these rules and regulations and said entity must apply for a license/application as set forth herein these rules and regulations. These rules and regulations contemplate issuance of licenses for a twelve (12) month period at a time, and any previously-issued license that attempts to or purports to license an entity to conduct Bingo of any kind in Greene County for longer than a twelve (12) month period is declared null and void immediately and said entity must apply for a license/application as set forth herein these rules and regulations. Even if an entity is grandfathered in as a result of a previously-issued license, that entity will be subject to all Bingo Rules and Regulations herein including any all amounts due and owing pursuant to Section 4.. These Rules and Regulations are intended to take effect immediately.

**Section 4. Recoup of Policing, Administrative and Infrastructure Cost.**

(a)     If the Authorized Organization conducts electronic bingo at any
        Authorized Facility, an amount of Ninety five dollars ($95.00)
        shall be assessed upon each Bingo machine (electronic player
        station or player terminal) used at any location pursuant to the
        provisions of these Rules and Regulations. Said amount shall be
        paid by the authorized organization using said machine(s) to the
        Greene County Commission General Fund on the first business
        day of each month during the calendar year for which the license is
        issued. This amount will be assessed at ninety five dollars ($95.00)
        per machine, per month. This amount will be payment for use and
        repair of Greene County infrastructure used and/or depleted
        through the operation of Bingo games in Greene County.

(b)     If the Authorized Organization conducts electronic bingo at any
        Authorized Facility, an amount of thirty five dollars ($35.00) shall
        be assessed upon each Bingo machine (electronic player station or
        player terminal) used at any location pursuant to the provisions of
        these Rules and Regulations which shall be paid to the Office of
        Greene County Sheriff. Said fee shall be paid by the authorized
        organization using said machine(s) on the first business day of
        each month during the calendar year for which the license is
        issued. This amount will be assessed at thirty five dollars ($35.00)
        per machine, per month. The thirty five dollar ($35.00) amount
        paid to the Office of Greene County Sheriff will be used to offset
        the added and increased expense and manpower necessary as a
        result of Alabama Constitutional Amendment 743, which said
        Amendment burdens the Office of Greene County Sheriff with the
        mandate and responsibility to license, regulate and govern Bingo
        operations within the borders of Greene County, Alabama. The
        thirty five dollar ($35.00) amount will also be used to offset
        increased legal and regulatory expense as well as increased
        necessary manpower required to regulate and police the Bingo
        facilities as well as to keep safe and protect members of the general
        public traveling from outside Greene County as well as employees
        of the Bingo facilities, and also citizens of Greene County,
        Alabama.

(c)     If the Authorized Organization conducts electronic bingo at any
        Authorized Location, an amount of twenty dollars ($20.00) shall
        be assessed upon each Bingo machine (electronic player station or
        player terminal) used at any location pursuant to the provisions of
        these Rules and Regulations which shall be paid to the City of
        Eutaw, Alabama. Said amount shall be paid by the authorized

organization using said machine(s) to the City of Eutaw, Alabama on the first business day of each month during the calendar year for which the license is issued. This amount will be assessed at twenty dollars ($20.00) per machine, per month. This amount will be paid to recoup and defray the cost of the use of City of Eutaw infrastructure since the City of Eutaw is the county seat of Greene County, Alabama.

(d)   If the Authorized Organization conducts electronic bingo at any Authorized Location, an amount of Ten dollars ($10.00) shall be assessed upon each Bingo machine (electronic player station or player terminal) used at any location pursuant to the provisions of these Rules and Regulations which shall be paid to the City of Forkland, Alabama. Said amount shall be paid by the authorized organization using said machine(s) to the City of Forkland, Alabama on the first business day of each month during the calendar year for which the license is issued. This amount will be assessed at Ten dollars ($10.00) per machine, per month. This amount shall be paid to recoup and defray the cost of the use of City of Forkland infrastructure since the City of Forkland is one of four incorporated municipalities in Greene County, Alabama.

(e)   If the Authorized Organization conducts electronic bingo at any Authorized Location, an amount of Ten dollars ($10.00) shall be assessed upon each Bingo machine (electronic player station or player terminal) used at any location pursuant to the provisions of these Rules and Regulations which shall be paid to the City of Boligee, Alabama. Said amount shall be paid by the authorized organization using said machine(s) to the City of Boligee, Alabama on the first business day of each month during the calendar year for which the license is issued. This amount will be assessed at ten dollars ($10.00) per machine, per month. This amount shall be paid to recoup and defray the cost of the use of City of Boligee infrastructure since the City of Boligee is one of four incorporated municipalities in Greene County, Alabama.

(f)   If the Authorized Organization conducts electronic bingo at any Authorized Location, an amount of Ten dollars ($10.00) shall be assessed upon each Bingo machine (electronic player station or player terminal) used at any location pursuant to the provisions of these Rules and Regulations which shall be paid to the City of Union, Alabama. Said amount shall be paid by the authorized organization using said machine(s) to the City of Union, Alabama on the first business day of each month during the calendar year for which the license is issued. This amount will be assessed at Ten dollars ($10.00) per machine, per month. This amount shall be paid

to recoup and defray the cost of the use of City of Union infrastructure since the City of Union is one of four incorporated municipalities in Greene County, Alabama.

(g)  Failure to remit the amounts described in sub-paragraphs (a) through (f) of this section by the end of the first business day of each month shall result in a penalty of twenty five percent (25%) of the total amounts due under these Rules and Regulations which said amount is due and payable on the second business day of the month. For each additional day that said amount and penalty remains unpaid, a flat amount of one thousand dollars ($1,000.00) per day shall be assessed.

(h)  At any time after the fifth business day wherein the license holder fails and/or refuses to remit the amounts due and/or the penalties, the Office of Sheriff of Greene County, Alabama shall order said facility closed until all amounts and penalties are paid in full. The Office of Sheriff of Greene County, Alabama may additionally exercise its option to revoke any and all licenses and permits as described further herein these Rules and Regulations.

(i)  The Greene County Sheriff's office gives notice that it may amend and/or revise Section 4 herein to include fees payable by operators of games involving paper bingo.

(j)  At any time after the issuance of a Bingo license, each license holder shall be subject to periodic inspection of the Bingo facilities by either the Sheriff or designated representative of the Sheriff's Office to determine and maintain an exact accounting of the Bingo machines at each facility. The Sheriff and/or its designated representative, shall be given immediate and unfettered and unrestricted access to all areas of the Bingo facility, the Bingo Equipment and Supplies, as well as any and all accounting records, including but not limited to, receipts.

**Section 5. General Regulations.**

(a)  The holder of a license for the operation of Bingo games within the Greene County limits shall be authorized to conduct Bingo games and pay Bingo expenses in accordance with these Rules and Regulations as well as Amendment 743 to the Constitution of Alabama 1901.

(b)  No person or organization shall conduct any game of Bingo except under a license issued pursuant to these Rules and Regulations.

(c)   No licensee will operate a Bingo game within the city limits of a municipality within Greene County, Alabama

(d)   A license holder may hold only one license and that license shall be valid for only one location in Greene County, Alabama. A license is not assignable or transferable and shall become automatically void upon the change of name, dissolution, loss of charter, or, if the license holder is a tax-exempt organization under the Federal income tax laws, the loss of exemption from taxation under the Internal Revenue Code.

(e)   The Sheriff shall refuse to grant a Bingo license or renewal to any applicant qualified hereunder unless and until the applicant fully provides the information required hereunder, such being provided in a form and in sufficient detail to satisfy the Sheriff of its validity and sufficiency. The Sheriff shall have complete discretion to require any reasonable confirming documentation as to any information required hereunder and shall have a reasonable time to check or confirm by any method available to him the accuracy or validity of any information provided hereunder.

(f)   Each Bingo license shall contain the name and address of the license holder, the location at which the license holder is permitted to conduct Bingo games, the days of the week on which the license holder is permitted to conduct Bingo games, the date on which the license was issued and upon which it expires.

(g)   The license holder shall display the license conspicuously at the location where Bingo is conducted at all times during the conduct of a Bingo game. The license shall be posted so that it can be viewed by the general public.

(h)   These Rules and Regulations shall be available to the general public at, among other places, the office of Greene County Sheriff. All interested parties are encouraged to enquire on a monthly basis as to any amendments to these Rules and Regulations.

(i)   No person under the age of nineteen (19) years shall be permitted to play any Bingo game, nor shall any person under the age of nineteen (19) years be permitted to conduct or assist in the operation of any game of Bingo.

(j)   Bingo games may be operated at the location owned or leased by the non-profit organization. The non-profit organization may lease the location and/or facility from any person and/or entity.

(k)     Each qualified location shall be insured through a general liability insurance policy in an amount not less than five million dollars ($5,000,000.00). If liquor is served at the qualified location, each qualified location shall also be insured through a policy of liquor liability insurance in an amount not less than one million dollars ($1,000,000.00) per occurrence.

(l)     Each qualified location shall have on-site security as prescribed and approved by the Sheriff.

(m)    Each qualified location shall have first aid personnel as prescribed and approved by the Sheriff.

(n)     A non-profit organization may not enter into any contract with any individual, firm, association or corporation to have the individual or entity operate Bingo games or concessions on behalf of the non-profit organization. A non-profit organization may not pay consulting fees, compensation, or salary, to any individual or entity for any services performed in relation to the operation or conduct of a Bingo game.

(o)     A non-profit organization may not lend its name or allow its identity to be used by another person in the operating or advertising of a Bingo game in which the non-profit organization is not directly and solely operating the Bingo game.

(p)     If any licensee pays in excess of ten thousand dollars ($10,000.00) during any Bingo session, said licensee shall self-report the violation to the Greene County Sheriff's Office (in writing) within forty eight hours of each violation, at which point the licensee will be subject to pay a penalty of two thousand dollars ($2,000.00) per week during which such violation occurred. For purposes of these Rules and Regulations a "business week" will be determined to have completed at 12:00 midnight on a Sunday. The fine/penalty as prescribed herein is payable within twenty four (24) hours of the conclusion of a business week. Payment of the fine should be made to the Greene County Commission General Fund. If the licensee fails to self-report a violation, the licensee is subject to revocation of its license immediately.

(q)     All authorized organizations licensed under these Rules and Regulations shall be required to maintain a separate checking account for Bingo operations, into which all Bingo funds are deposited and from which all Bingo disbursement checks are

written. The Bingo checking account is in addition to any other checking or savings account maintained by the authorized organization.

(r)     No person who has been convicted of a felony offense, and whose civil rights have not been restored by law shall conduct or in any way participate in the operation of any Bingo game permitted hereunder. Nor shall any person who has been convicted of any gambling offense be permitted to conduct or in any way participate in the operation of any Bingo game permitted hereunder within twelve (12) months of the conviction. No person who is, or an associate of any person, connected with, or known to be connected with, any known criminal organization shall be permitted to conduct or in any way participate in the operation of any Bingo game permitted hereunder.

(s)     Each licensed Bingo establishment shall operate at least five hundred (500) machines at all times.

(t)     Each licensed Bingo establishment shall have a parking lot that conforms with all applicable statutes and code regulations. However, each licensed Bingo establishment shall have at least .75 parking spaces per machine operating inside the premises. For example, an establishment with five hundred machines would be required to have a minimum of three hundred and seventy five (375) parking spaces.

## Section 6. Records and Accounting.

Each holder of a Bingo license shall keep and maintain the following records and accounts pertaining to each Bingo session conducted by it for at least three (3) years from the date of such session:

(a)     An itemized list of all gross receipts for each Bingo session, which shall include all receipts derived from the sale of Bingo cards, entrance fees, donations or from any other source whatsoever pertaining to the operation of such session.

(b)     An itemized list of all Bingo expenses, costs and disbursements, other than prizes paid or given as a result of the operation of any Bingo session, together with the name and address of each person to whom said Bingo expenses, disbursement or consideration was paid or given.

(c)   A receipt of invoice for all items purchased and for all services rendered; and such other records as will adequately reflect the amount and nature of such expenses, costs and disbursements.

(d)   All records, receipts, accounts and/or lists required to be kept and maintained hereunder shall be open to inspection by the Sheriff's Office and/or its designated representative or its authorized agent or representative during reasonable business hours. All locations in which Bingo games are being held by a license holder or at which a license holder intends to conduct Bingo games, shall be open to the Sheriff's Office and/or its designated representative or its authorized agent or representative during all times at which Bingo games are being conducted and during all other reasonable business hours. On or before April 15 of each calendar year, each holder of a Bingo license who held a permit for all or any part of the preceding calendar year shall file with the Sheriff's Office and/or its designated representative a verified copy of all records, receipts, accounts, contracts and/or lists required to be kept or maintained hereunder relating to the operation of Bingo games for said previous calendar year.

## Section 7. Enforcement and Supervision; Rules.

The Sheriff's Office and/or its designated representative shall be charged with the duty to and shall enforce and supervise the administration and enforcement of all the rules, regulations and reporting requirements established hereunder. In addition to these regulations, the Sheriff's Office and/or its designated representative shall enforce all applicable criminal and civil laws of the State of Alabama to prevent and discourage any illegal activity.

## Section 8. Revocation of Permits; Appeal.

The Sheriff's Office and/or its designated representative, for good cause shown, may revoke any license issued pursuant hereto if the license holder violates any of the regulations herein promulgated, provided however, that no permit may be revoked without complying with the following procedures:

(a)   The Sheriff's Office and/or its designated representative must deliver or cause to be delivered to any person named in the permit application thirty (30) days written notice of its intention to revoke said license and the grounds therefore in specific detail to allow the license holder to cure any alleged violation of any rule or \ regulation herein.

(b)   In curing any alleged violation, the Sheriff's Office and/or its designated representative may require a license holder to post a bond for an amount which will ensure that additional violations

Page 15 of 18

will not occur. The amount of said bond will be at the sole discretion of the Sheriff's Office and/or its designated representative.

(c)   If the license holder cures any alleged violation within the thirty (30) day notice period no revocation shall be affected.

(d)   In the event that the Sheriff's Office and/or its designated representative does not consider the violation cured within the thirty (30) day notice, it shall give additional notice to the license holder, in the manner set forth above, that it intends to proceed with the revocation and give the license holder the opportunity to pursue an appeal of such decision to the Greene County Commission within ten (10) days of date of the notice of revocation. A hearing shall be conducted within a reasonable time. Pending appeal to the Greene County Commission, the license shall remain in full force and effect. The decision of the Greene County Commission shall be final.

(e)   If the license holder violates the same rule or regulation more than twice within any three (3) months period said license holder will not be given thirty (30) days to cure any alleged violation but will immediately either cease and desist all Bingo operations or pay a fine to the Greene County Commission's General Fund, the amount of said fine being at the sole discretion and authority of the Sheriff of Greene County, Alabama.

## Section 9. Effect of Revocation.

A license holder whose license is revoked as herein setout shall return such license to the Sheriff's Office and/or its designated representative on or before the effective date of such revocation and whether returned or not such license shall be void and not valid beyond the effective date of such revocation. A license holder whose license is revoked in consequence of a violation of any rule or regulation promulgated herein shall be ineligible to apply for or have issued to it another license hereunder for a period of three (3) months after the effective date of such revocation. Nor shall any license be issued to any person which is directed or controlled by persons listed in the application for license filed pursuant to Section 3(b) hereof, in regard to the revoked license or to any organization of which the membership is substantially the same as any organization whose license has been revoked hereunder for a period of three (3) months after the effective date of such revocation.

## Section 10. Appeal of Denial of Permit/License.

Any person whose application for a permit/license hereunder was denied by the Sheriff's Office and/or its designated representative pursuant to these regulations shall

have the right to appeal such denial to the Greene County Commission in the same manner as an appeal of revocation of a permit/license issued hereunder may be appealed pursuant hereto provided however, that such person shall not operate any Bingo game until such application shall have been granted, and a permit issued, pursuant to any Order of the Greene County Commission. The decision of the Greene County Commission shall be final.

## Section 11. Amendments to Regulations.

If the Greene County Sheriff's Office and/or its designated representative should make any amendment to these regulations, other than an amendment to Section 12 regarding Advertising, such amendment shall not be applicable to any license holder for the term of such license, unless the license holder should voluntarily choose to be subject to such amendment by submission of a written notification to the Sheriff's Office and/or its designated representative. Any such amendment to these regulations will take full force and effect with regard to any license holder at the time that any permit/license is renewed pursuant to Section 3(f) hereunder. The amendment shall take full force and effect at the moment that the permit/license is renewed. If the Sheriff of Greene County amends Section 12 regarding Advertising, whether said amendment be to add rules, regulations or fees, said amendment will take effect immediately.

## Section 12. Advertising.

If a licensee intends to advertise Bingo in any form or fashion, said licensee shall apply for a permit to advertise and shall not advertise in any form or fashion until the Sheriff of Greene County has granted a permit.

(a)    No advertising of Bingo shall occur in any form or fashion until the licensee has been granted a permit to advertise.

(b)    Advertising permits can be obtained at the Greene County Sheriff's Office and should be submitted there as well.

(c)    An advertising permit is good for twelve (12) months from the date that it was granted after which time the permit expires and the licensee must apply for another permit to advertise. The licensee will be allowed to continue to advertise while its second and/or subsequent application to advertise is being processed by the Sheriff's Office.

(d)    The applicant fee for advertisement is one thousand dollars ($1,000.00) and will be paid at the time the application is submitted to the Greene County Sheriff's Office. The fee will be paid to the Greene County Commission General Fund.

(e)    The Sheriff of Greene County anticipates amending these Rules and Regulations to include advertising rules, regulations and fees for advertising but has declined at this point to include same in these initial Rules and Regulations.


*Jonathan "Joe" Benison*

Jonathan "Joe" Benison,
Sheriff of Greene County, Alabama

Signed this the 21 day of Jan. , 2011

# EXHIBIT 2

# Class B Qualified Location License

## EXPIRES OCTOBER 22, 2012

License No. 1

By the authority vested in the Sheriff of Greene County, Alabama, pursuant to the provisions of Amendment No. 743 of the Constitution of Alabama and the regulations promulgated thereunder, this Qualified Location License is hereby issued to:

GREAT WESTERN DEVELOPMENT CORPORATION, INC,
P. O. BOX 855
EUTAW, AL. 35462

Which said licensee has been inspected and approved by the Sheriff as a Qualified Location.
Said Bingo Games will be operated in the designated facility of Monday thru Sunday.

Issued this the 22ND day of OCTOBER, 2011
from the Greene County Sheriff's Office

By: _____
JONATHAN L. BENISON
Sheriff of Greene County

(Note: For Class B Bingo, licensee shall be authorized to operate Bingo Games of any qualified location where a minimum of Twenty (20) applicants are licensed for such location.)

This license must be prominently displayed at the place said Class B Bingo Games are operated and conducted.